# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**HEARTLAND HOSPICE SERVICES, LLC,**

           **Plaintiff,**

v.

**ROBERT F. KENNEDY, JR.,** in his official capacity as Secretary of the United States Department of Health & Human Services,

           **Defendant.**

## COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

Plaintiff Heartland Hospice Services, LLC (the "Hospice"), by and through its undersigned counsel, files this Complaint against Defendant Robert F. Kennedy, Jr., in his official capacity as the Secretary of the United States Department of Health and Human Services (the "Secretary"), seeking judicial review of the decision rendered by the Administrative Law Judge ("ALJ") of the Office of Medicare Hearings and Appeals ("OMHA") in OMHA case numbers 3-11517860459, 3-11515783544, 3-11516916483, 3-11516172842, 3-11517628769, and 3-11517724469 and in relation to Medicare Appeals Council ("Council") docket number M-23-4462.

## PARTIES, JURISDICTION, AND VENUE

1. The Hospice is an Ohio limited liability company with its principal place of business located at 100 Madison Avenue, Toledo, Ohio 43604.

2. At all times relevant hereto, the Hospice was a Medicare-certified company offering hospice services in Ohio.

3. The Hospice operates multiple locations, including a location at 6500 Busch Boulevard, Suite 210, Columbus, Ohio 43229, NPI #1710931357 (the "Columbus Location").

4. Defendant, Robert F. Kenndey, Jr., is the Secretary of the United States Department of Health and Human Services and the proper defendant in this action pursuant to 42 C.F.R. § 405.1136(d)(1).

5. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* ("Medicare Act"), and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (the "APA").

6. Prior to filing this Complaint, the Hospice engaged in the administrative appeal process described in 42 C.F.R. § 405 and filed appeals within the regulatory proscribed timeframe upon receipt of determinations.

7. The Hospice has exhausted its administrative remedies, and this case is eligible for judicial review.

8. Jurisdiction is proper pursuant to 42 U.S.C. § 1395ff(d), which authorizes judicial review of the ALJ's decision.

9. Venue is proper pursuant to 42 U.S.C. § 1395ff(b) and 42 C.F.R. §405.1136(b)(1), as the Hospice's principal place of business is located in this judicial district.

10. The amount in controversy exceeds the threshold amount of $1,900.00 for judicial review set forth in 87 Federal Register 59437 (effective Jan. 1, 2025).

## STATEMENT OF FACT

11. In 2022, the Supplemental Medical Review Contractor ("SMRC"), on behalf of CMS, requested records from the Hospice pertaining to 164 claims for nine (6) patients billed to Part A of the Medicare hospice program.

2

12. The records requested included, but were not limited to, hospice beneficiary election statements, certifications of terminal illness and corresponding face-to-face documentation, the initial and all subsequent plans of care, physician orders, diagnostic testing results, current medication lists, the initial assessment and most recent history and physical, multidisciplinary visit notes, and interdisciplinary group / progress notes.

13. The claims related to services provided by the Hospice between August 1, 2017 through May 31, 2020.

14. The Hospice promptly complied with this request and provided the SMRC thousands of pages of responsive records for review.

15. The Hospice was notified that the SMRC denied all of the claims under review and alleged an overpayment of $717,660.65 via demand letters from National Government Services, Inc. ("NGS") dated April 8, 2022; April 11, 2022; April 14, 2022; April 15, 2022; and April 28, 2022, asserting that the Hospice must refund a portion of the overpayment to Medicare.

16. On May 4 and 12, 2022, the Hospice initiated an appeal of the findings and NGS's demand letters through the Medicare administrative appeal process by submitting requests for redetermination to NGS.

17. In redetermination decisions dated June 6, 2022; June 7, 2022; June 8, 2022; June 9, 2022; and June 14, 2022, and received by the Hospice soon after the dates of those decisions, NGS upheld the denial of coverage for all claims at issue.

18. On August 3 and 10, 2022, the Hospice filed requests for reconsideration with MAXIMUS Federal Services ("Maximus"), the QIC, appealing the denied claims.

19. In its reconsideration decision, Maximus upheld, in whole or in part, the denial of 115 of the 164 appealed claims.

20. The Hospice did not receive (i) written reconsideration decisions from the QIC, nor, (ii) notices from the QIC relating to the QIC's inability to complete its review of the reconsideration request. Such decisions or notices are required by 42 C.F.R. § 405.970(a) to be sent by the QIC to the provider.

21. Despite the lack of any reconsideration decisions or other notices, NGS began recouping the alleged overpayment amount on November 22, 2022.

22. Pursuant to 42 C.F.R. § 405.379(f)(1), the commencement of recoupment absent a reconsideration decision is improper. Accordingly, the recoupment of the alleged overpayment by NGS beginning on November 22 either (i) commenced in error and contrary to 42 C.F.R. § 405.379(f)(1), or, (ii) suggested that the QIC made reconsideration decisions that had not been sent to or received by the Hospice.

23. The Hospice, through counsel ("Counsel"), tried to determine the existence and status of any potential reconsideration decisions made by the QIC.

24. Counsel reached out to the QIC and CMS numerous times, requesting copies of any reconsideration decisions.

25. On December 6, 2022, the QIC provided reconsideration decisions to the Hospice, but rather than sending reconsideration decisions relating to the audit of the Hospice, the QIC sent reconsideration decisions relating to a different hospice provider.

26. On December 13, 2022, Counsel emailed Liliana Medros at CMS.

27. In response to the Hospice's inquiries, on December 13, 2022, CMS provided Counsel with several Reconsideration Appeal Numbers purportedly related to the audit of the Hospice, in an apparent attempt to assist the Hospice in locating any applicable reconsideration decision. However, only one of the Reconsideration Appeal Numbers provided to the Hospice by

4

CMS related to a reconsideration decision concerning the Hospice's several reconsideration requests. At least 11 of the Reconsideration Appeal Numbers related to a provider other than the Hospice.

28. Following additional communications between the Hospice and the QIC and CMS, by January 5, 2023, Counsel received, for the first time, reconsideration decisions relating to the Hospice's audit and appeal.

29. The Hospice was unable to appeal these reconsideration decisions to the ALJ level of appeal because such further appeals must include the "reasons the appellant disagrees with the QIC's reconsideration or other determination. . .". See 42 C.F.R. § 405.1014(a)(1)(vi). The Hospice could not identify the reasons for its disagreement with reconsideration decisions without having received those reconsideration decisions.

30. Pursuant to 42 C.F.R. § 405.1014(c), the Hospice timely filed with OMHA a request for a consolidated hearing before an ALJ.

31. The Hospice made this filing on March 6, 2023, which was within 60 days of its January 5, 2023, receipt of the reconsideration decisions.

32. Included with the ALJ hearing request were three declarations which detailed the events relating to the Hospice's non-receipt of the reconsideration decisions until January 5, 2023, the Hospice's mail processing practices demonstrating its non-receipt of the reconsideration decisions, and its efforts to obtain the reconsideration decisions from the QIC and CMS: (1) Sherri Fonte, paralegal for Counsel; (2) Thomas Maran, the Hospice's Additional Documentation Request Specialist; and (3) Michael Reagan, Senior Administrator for the Hospice.

33. Through these declarations, the Hospice demonstrated non-receipt of the Decisions until January 5, 2023, which rendered the Hospice's March 6, 2023, request for ALJ review timely under the applicable regulations.

34. The Hospice also established "good cause" to allow what may otherwise be considered an untimely appeal submission. 42 C.F.R. §§ 405.1014(e) and 405.942(b)(2)-(3).

35. In rulings issued on April 13, 2023 (the "Dismissals"), the ALJ dismissed the ALJ Hearing Request as untimely and lacking a good cause basis for an untimely submission. The Dismissals were contrary to the regulations applicable to appeal timeliness and good cause.

36. On June 12, 2023, the Hospice submitted to the Council a Consolidated Request for Review of ALJ Medicare Notices and Orders of Dismissal relating to all matters appealed by the Hospice.

37. In parallel to its request for review by the Council, the Hospice requested that the ALJ vacate the Dismissals in a letter submitted to OMHA on June 12, 2023.

38. The ALJ failed to take action on the Hospice's request within 60 days of its submission as required by Section 20.7.5.2 of the OMHA Case Processing Manual.

39. Therefore, on September 15, 2023, the Hospice alerted the Associate Chief ALJ for the Kansas City office of OMHA to this failure to take action.

40. In an order dated September 29, 2023, the Associate Chief ALJ for the Kansas City office of OMHA denied the Hospice's request to vacate the Dismissals.

41. In an order dated March 21, 2025, the Council denied the Hospice's Consolidated Request for Review of ALJ Medicare Notices and Orders of Dismissal relating to all matters appealed by the Hospice.

6

42. As with the Dismissals, the Council's order was contrary to the regulations applicable to appeal timeliness and good cause.

43. As mandated by 42 C.F.R. §§ 405.1132(b), 1136(c)(1), this action has been commenced within 60 days of receipt of the Council's order of denial dated March 21, 2025.

## COUNT I: VIOLATION OF THE MEDICARE ACT AND ADMINISTRATIVE PROCEDURE ACT
### (The ALJ and the Council Applied the Incorrect Legal Standards)

44. The Hospice hereby incorporates by reference paragraphs 1 through 43 herein.

45. The failure to apply the correct legal standards or to provide the Court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.

46. The ALJ and the Council applied incorrect legal standards when they committed errors including, but not limited to, correctly applying 42 CFR § 405.1014 and 42 CFR § 405.942.

47. 42 CFR § 405.1014(c), a request for an ALJ's review of a reconsideration decision must be filed "[w]ithin 60 calendar days **from the date the party receives notice**." (emphasis added).

48. Pursuant to 42 CFR § 405.1014(e)(1)-(3), this timeline may be extended beyond the 60 days should an ALJ find "good cause" for late filing.

49. Pursuant to 42 CFR § 405.942(b)(3)(v), good cause exists when a party did not receive the notice of determination or decision.

50. The presumption of receipt 5 calendar days following the date on notice is rebuttable if the appellant can establish receipt outside of the 5-day window. Medicare Program: Appeal Rights for Certain Changes in Patient Status, 89 Fed. Reg. 83,245 (October 15, 2024).

7

51. Statements made under oath affirming nonreceipt of agency decisions causing an untimely appeal are sufficient evidence to rebut the presumption of delivery.

52. The ALJ and the Council further misapplied the law when the ALJ and the Council imposed requirements on the Hospice, which are not required under the law, including, but not limited to, that the Hospice:

    a. submit an ALJ request without actually having the Decisions and the underlying reasoning;

    b. reach out to the QIC regarding the matter for either an appeal number or copy of the Decisions;

    c. affirmatively reach out to the QIC when it did not receive the Decisions;

    d. submit evidence that could support where the requested reconsiderations be sent;

    e. contact OMHA to locate the Decisions; and

    f. submit a FOIA request for the Decisions.

53. Based on this failure to apply the correct legal standards, the Decision should be reversed.

## COUNT II: VIOLATION OF THE MEDICARE ACT AND ADMINISTRATIVE PROCEDURE ACT
### (The ALJ's and the Council's Decisions are Not Supported by Substantial Evidence)

54. The Hospice hereby incorporates by reference paragraphs 1 through 43 herein.

55. The ALJ's and the Council's Decision must be supported by "substantial evidence," and where reliance is placed on one portion of the record in disregard of over-balancing evidence to the contrary, the Court may reverse the Decision.

56. The unfavorable determinations in the ALJ's and the Council's Decision are not supported by substantial evidence and are contrary to the overwhelming weight of the evidence.

57. The QIC did not send its written reconsideration decisions, inability to complete its review of the reconsideration request, or dismissal within 60 days. 42 C.F.R. § 405.970(a).

58. Only after the Hospice's counsel engaged in lengthy communications with the QIC and CMS did the Hospice receive the Decisions by January 5, 2023.

59. Upon information and belief, the QIC failed to send the Decisions to the Hospice.

60. The Hospice timely filed a Request for Consolidated Hearing at the ALJ on March 6, 2023.

61. Included with the ALJ hearing request were three declarations which detailed the above series of events: (1) Sherri Fonte, paralegal for Counsel; (2) Thomas Maran, the Hospice's Additional Documentation Request Specialist; and (3) Michael Reagan, Senior Administrator for the Hospice, as detailed above.

62. The Hospice also furnished additional evidence, including correspondence documenting their proactive communication with the QIC, where it diligently pursued the missing decisions.

63. The Dismissals focused on this corroborating evidence and criticized the Hospice for not taking sufficient actions to obtain the Decisions, despite no obligation to do so.

64. Specifically in relation to evidence regarding 1) where the reconsideration decisions were requested to be sent and 2) that the Hospice did not receive the decisions at *any* of their locations.

65. The Dismissals were issued despite the Hospice submitting copious evidence rebutting the regulatory presumption (to the extent that presumption was applicable) that it never received reconsideration decisions from the QIC that would have rendered its Request untimely.

66. The only showing required of the Hospice is that the Decisions were not received until January 5, 2023.

67. The ALJ and the Council Decision are not supported by substantial evidence and are contrary to the overwhelming weight of the evidence which shows that the Hospice did not receive the Decisions until January 5, 2023.

68. As a result of the absence of substantial evidence supporting the Decision, the Decision should be reversed.

## REQUEST FOR RELIEF

**WHEREFORE**, the Hospice respectfully requests that this Court:

69. Find the ALJ's and the Council's Decisions applied the wrong legal standards;

70. Find the ALJ's and the Council's Decisions were not supported by substantial evidence;

71. Reverse the decision of the ALJ and the Council that the request for hearing was not timely;

72. Grant the Hospice any other legal or equitable relief that the Court may deem just and proper.

Date: May 20, 2025                     Respectfully submitted,

By:     *s/ Shawn J. Anderson*
        Shawn J. Anderson
        HUSCH BLACKWELL LLP
        511 N. Broadway, Suite 1100
        Milwaukee, Wisconsin 53202
        Phone: (414) 273-2100
        Fax: (414) 223-5000
        Shawn.Anderson@huschblackwell.com
        OH Bar No.: 102064
        ND OH Bar No.: WI 1093176

        ***Attorney for In Home Health, LLC***