IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Heartland Hospice Services, LLC,

Plaintiff,

-vs-

Robert F. Kennedy, Jr.
*in his official capacity as Secretary of the*
*United States Department of Health &*
*Human Services*,

Defendant.

Case No. 3:25 CV 1037

<u>MEMORANDUM OPINION</u>

JUDGE JACK ZOUHARY

### INTRODUCTION

Sometimes Medicare overpays service providers.  This triggers a complex chain reaction of audits, records requests, claim determinations, appeals, redeterminations, hearings, and requests for reconsideration.  All of this involves multiple statutes, government entities, and contractors.

In this case, Medicare determined it overpaid Plaintiff Heartland Hospice Services, LLC ("Heartland") $717,660.65 for services rendered at Heartland's Columbus, Ohio location.  Heartland initiated an appeal.  Unsuccessful in the administrative process, Heartland now seeks judicial review after its request for an Administrative Law Judge ("ALJ") hearing was dismissed as untimely.

The threshold issue is jurisdiction.  Heartland asks this Court to reverse the ALJ dismissals and remand for a hearing on the merits (Doc. 17-1).  The Secretary argues this Court lacks jurisdiction because the Medicare Act only authorizes judicial review of a final decision made *after* a hearing, and no such hearing occurred here (Doc. 16-1).  The matter is fully brief (Docs. 16, 17, 19, 21), and this Court held a Hearing (Doc. 24).

### BACKGROUND

Medicare is a federal health insurance program for eligible elderly and disabled individuals.  It provides coverage for hospice care under Part A.  42 U.S.C. §§ 1395d(a)(4), 1395x(dd).  The

Secretary of the Office of Health and Human Services (HHS") administers Medicare through the Centers for Medicare & Medicaid Services ("CMS").  HHS contracts with private contractors to process and pay Medicare claims, and Medicare may later audit paid claims to determine whether overpayments were made.  42 U.S.C. §§ 1395h, 1395u, 1395ddd(b); 42 C.F.R. § 405.980.

Heartland, an Ohio limited liability company with its principal place of business in Toledo, Ohio, is a Medicare-certified provider of hospice services (Doc. 15 at 1).  In a letter dated March 30, 2021, a CMS Supplemental Medical Review Contractor ("SMRC") requested records from Heartland for 384 Medicare Part A hospice claims (*id.* at 2).  The claims involved services provided at Heartland's Columbus location between August 1, 2017 and May 31, 2020 (*id.*).  The SMRC requested beneficiary election statements, certifications of terminal illness, face-to-face documentation, plans of care, physician orders, diagnostic testing results, medication lists, assessments, visit notes, and interdisciplinary group-progress notes (*id.*).  Heartland produced thousands of pages of records (*id.*).

Following review, the SMRC identified a 42.60% error rate, denied 164 of the 384 reviewed claims, and calculated a $717,660.65 overpayment (*id.*).  National Government Services ("NGS"), the Medicare Administrative Contractor, issued four demand letters dated April 8, April 11, April 14, and April 15, 2022 (*id.* at 2–3).  Heartland then began the Medicare administrative-appeal process. It first submitted redetermination requests to NGS (*id.* at 3).  NGS issued five redetermination decisions dated June 6, June 7, June 8, June 9, and June 14, 2022, upholding the claim denials (*id.*).

Heartland next sought reconsideration from Maximus Federal Services, the Qualified Independent Contractor ("QIC"), on August 3 and August 9, 2022 (*id.*).  Maximus issued seven reconsideration decisions upholding, in whole or in part, the denial of 115 appealed claims (*id.*).  Four decisions, each dated October 3, 2022, were addressed to "PROMEDICA HOSPICE" at the

Columbus address (*id.* at 3–4).  Another decision, dated October 7, 2022, was addressed to that same Columbus address (*id.* at 4).  Two earlier decisions were dated September 30, 2022, one addressed to "HEARTLAND HOSPICE" and one addressed to "PROMEDICA," both allegedly sent to the Columbus address (*id.*).

Heartland expected to receive physical reconsideration decisions from Maximus around the first week of October 2022, but alleges it did not receive them (*id.*).  On November 22, 2022, Heartland identified that overpayment recoupment had begun (*id.*).  Heartland says it then sought assistance from counsel, and counsel spent weeks attempting to obtain the reconsideration decisions from Maximus and CMS (Doc. 17-1 at 7–8).  During those efforts, Maximus and CMS apparently supplied incorrect appeal numbers, incorrect provider information, and decisions relating to other hospices (*id.*).  Heartland ultimately obtained the reconsideration decisions by fax on January 5, 2023 (*id.* at 8).

At the Hearing, Heartland maintained that it only learned the reconsideration decisions had issued when it had the decisions in hand (Tr.[1] at 3–4).  The Secretary does not dispute the dates Heartland claimed it received the decisions, but argued Heartland "[was], or should have been, aware" earlier that adverse decisions had issued and should have checked the portal or contacted Maximus sooner (*id.* at 4–5).

On March 3, 2023, Heartland submitted a consolidated request for an ALJ hearing to the Office of Medicare Hearings and Appeals ("OMHA"), enclosing seven OMHA-100 forms, a request for extension of time, supporting exhibits, and copies of the Maximus reconsideration decisions (Doc. 15 at 5).  The ALJ reviewed the consolidated hearing request on March 6, 2023 and concluded the

---

[1] The citation "Tr." refers to the draft Transcript of the Hearing held June 24, 2026.

request was untimely under the 60-day filing deadline, measured from presumed receipt of the mailed reconsideration decisions (*id.*).

OMHA issued Notices of Dismissal dated April 13, 2023, dismissing the consolidated hearing request as untimely (*id.*).  The ALJ also found no good cause for the late filing, concluding Heartland and its counsel had knowledge of adverse reconsideration decisions in November or December 2022 but did not file for an ALJ hearing until March 2023 (*id.*).

Heartland then sought Medicare Appeals Council review of six of the OMHA appeal numbers on June 12, 2023 (*id.*).  The Appeals Council denied review nearly two years later on on March 21, 2025 (*id.* at 6).  This lawsuit followed.  Heartland asserts claims under the Medicare Act and the APA, contending the agency applied the wrong law and that the underlying claim determinations were unsupported by substantial evidence (Doc. 16-1 at 6).

## LAW

Medicare judicial review is governed by statute.  The Medicare Act incorporates 42 U.S.C. § 405(g) and permits judicial review of certain Secretary decisions "as is provided in [S]ection 405(g)."  42 U.S.C. § 1395ff(b)(1)(A).  Section 405(g), in turn, authorizes judicial review of a "final decision of the Commissioner of Social Security made after a hearing."  Section 405(h), incorporated into Medicare through 42 U.S.C. § 1395ii, makes this route exclusive for claims arising under Medicare.  *See Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984); *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456–57 (1999).

Under the Act, a party must file a request for an ALJ hearing within 60 calendar days after receiving notice of a QIC reconsideration.  42 C.F.R. § 405.1002(a)(1).  Receipt is presumed five calendar days after the date of the reconsideration unless there is evidence to the contrary.  42 C.F.R. § 405.1002(a)(3).  An ALJ may extend the deadline for good cause.  42 C.F.R. §§ 405.1014(e),

405.1052(a)(2).  In deciding good cause, the adjudicator considers circumstances that kept the party from filing timely, whether agency action misled the party, and whether the party had any physical, mental, educational, or linguistic limitation that prevented timely filing.  42 C.F.R. § 405.942(b)(2).  The regulations identify, as an example relevant to good cause, failure to receive notice of the determination or decision.  42 C.F.R. § 405.942(b)(3)(v).

**DISCUSSION**

Heartland's arguments focus on receipt, timeliness, and fairness.  It argues Maximus did not transmit the reconsideration decisions correctly, Heartland did not receive them when issued, counsel diligently attempted to obtain them, and the March 2023 ALJ hearing request was timely if measured from the actual receipt date.  Alternatively, Heartland argues it established good cause for any delay.  The Secretary responds that Heartland is presumed to have received the decisions five days after they were dated, that Heartland failed to rebut that presumption, and that no ALJ hearing means no judicial review.

**Jurisdiction**

This is not a routine request to reopen an old Medicare determination.  Nor is it a request for this Court to decide the hospice-claim merits in the first instance.  Heartland asks this Court to review an agency dismissal based on disputed receipt that prevented the initial ALJ hearing.  The question is whether the agency may end the administrative process at that point, and then avoid judicial review, without record support that the provider received the decision that started the clock.  Revieiwing the cases most closely addressing notice and receipt, the answer is no.

Heartland first points to *McKentry v. Secretary of Health & Human Services*, 655 F.2d 721 (6th Cir. 1981).  There, the claimant sought to compel a hearing on the merits after the agency dismissed her hearing request as untimely.  *Id.* at 722.  The Sixth Circuit reversed.  It held that the

5

60-day period ran from receipt of notice, not mailing, and the presumption of delivery did not prevail where the record did not establish mailing to the claimant or her attorney and the claimant submitted evidence of nonreceipt.  *Id.* at 724.  The court remanded for a hearing on the merits.  *Id.*

Courts in this district have applied the same principle.  In *Pudlowski v. Commissioner of Social Security*, the Commissioner argued the court lacked jurisdiction because the claimant had not identified a final decision made after a hearing.  2015 WL 13730932, at *4 (N.D. Ohio 2015).  The court rejected that argument, reasoning that the Appeals Council denial was, at least, the final decision on whether the claimant had good cause for an untimely hearing request, and that a contrary rule would leave the claimant with no recourse.  *Id.*  The court also recognized that lack of notice raises a colorable due-process concern and remanded for further proceedings on good cause and receipt.  *Id.* at *4–6.

Finally, *Smith v. Berryhill* points in the same direction, even though it decided a slightly different issue.  587 U.S. 471 (2019).  The Supreme Court held that an Appeals Council dismissal of an untimely request for review after an ALJ merits hearing is a reviewable final decision.  *Id.* at 479–80.  In doing so, the Court emphasized the "strong presumption" favoring judicial review and rejected the idea that Congress made the agency the "unreviewable arbiter" of whether claimants complied with its procedures.  *Id.* at 482–83.  The Court expressly reserved the earlier-step question presented here, but noted that a claimant whose ALJ hearing request was dismissed as untimely "would not have received a 'hearing' at all" and that a hearing "is not always required."  *Id.* at 483 n.17.

The Secretary relies on cases holding that courts generally lack jurisdiction where no ALJ hearing occurred.  And some cases do say so.  *See, e.g.*, *Hilmes v. Sec'y of Health & Hum. Servs.*, 983 F.2d 67, 69 (6th Cir. 1993); *Czerniak v. Comm'r of Soc. Sec.*, 2021 WL 371851, at *2 (W.D. Mich. 2021); *Five Points Healthcare of NC, LLC v. Becerra*, 669 F. Supp. 3d 524, 529–30 (E.D.N.C.

6

2023).  But the records in those cases are distinguishable.  Those courts did not hold that an agency may dismiss a first request for hearing as untimely based solely on presumed receipt, without proof of receipt and despite sworn evidence of nonreceipt, therefore placing the dismissal beyond any judicial review.

Nor does 42 C.F.R. § 405.1116 require dismissal here.  That regulation provides that Appeals Council review of an ALJ dismissal is binding and not subject to judicial review "unless reopened and vacated by the Council."  But a regulation cannot answer the statutory jurisdiction question in a way that makes the agency the final and unreviewable judge of whether its own notice procedures were followed.  *Smith*, 587 U.S. at 482–83.  And § 405(g), not § 405.1116, defines this Court's jurisdiction.  This Court therefore declines to apply § 405.1116 to bar review of this narrow notice-and-receipt challenge.

To be clear, this Court is not using the APA to create jurisdiction, as it does not provide an independent grant of subject-matter jurisdiction.  *Califano v. Sanders*, 430 U.S. 99, 105–07 (1977).  Nor does it override a more specific statutory review scheme.  *Your Home*, 525 U.S. at 456–57.  As Heartland confirmed at the Hearing, it invokes the APA as a standard of review only after jurisdiction exists, not as an independent jurisdictional basis (Tr. at 12–13).  Nor does this Court recognize broad judicial review of every procedural dismissal under the Medicare Act.  Rather, when a provider seeks its initial ALJ hearing, but the agency then dismisses the hearing request as untimely, the filing deadline depends on receipt of the QIC decision.  If the provider submits evidence that it did not receive the decision when presumed, this Court has jurisdiction to review whether the dismissal rests on an adequate receipt determination.

**Receipt and Good Cause**

On this record, the dismissal cannot stand.  The regulations do not make the date of the QIC reconsideration decision the filing trigger.  Rather, receipt of notice is the trigger.  42 C.F.R. § 405.1002(a)(1).  The five-day rule is simply a presumption, and it gives way when a party provides evidence to the contrary.  42 C.F.R. § 405.1002(a)(3).  Heartland has done so.  It submitted sworn statements and correspondence describing nonreceipt, attempts made to obtain the decisions, receipt of incorrect information, and later transmission by fax (Docs. 17-1 at 7–8; 19 at 5–6).

The Secretary characterizes Heartland's proof as self-serving.  But sworn testimony is still evidence.  *McKentry* treated evidence of nonreceipt as sufficient to defeat the presumption where the agency record did not establish mailing or receipt.  655 F.2d at 724.  And *Pudlowski* likewise rejected dismissal where the record did not establish that notice was mailed and the claimant raised nonreceipt.  2015 WL 13730932, at *5–6.  Declarations do not necessarily control every receipt dispute.  However, after Heartland submitted evidence of nonreceipt, the Secretary needed more than the date appearing on the reconsideration decisions, and speculation about what Heartland should have done, to keep the presumption intact.

The Hearing confirms this conclusion.  The Secretary offered no internal proof from Maximus that the seven reconsideration decisions were actually mailed, were not returned, or were otherwise delivered to Heartland within the presumed period.  Instead, the Secretary argued Heartland should have inferred by October that decisions likely had issued, checked the portal, or requested an extension (Tr. at 4–5, 18–21).  The Secretary's "awareness" argument also falls short.  Starting the clock at recoupment or constructive notice would nullify the word "receipt."  A provider could be forced to appeal a decision it had not seen, without knowing the decision's reasoning, claim-specific disposition, or issues to present.  The regulations require a hearing request to identify the *specific*

8

*issues* and explain why the appellant disagrees with the QIC reconsideration. 42 C.F.R. § 405.1014(a)(1). That requirement is difficult to square with a rule that starts the appeal period before the provider receives the decision it must challenge. Perhaps Heartland could have done more, but those arguments do not establish receipt of the QIC reconsideration notices. And the regulation starts the 60-day period from receipt, not from constructive awareness, or the date on which a sophisticated provider could have investigated further.

The ALJ's good-cause analysis suffers from the same error (Doc. 9-1 at 209–11). The ALJ relied on Heartland's expected QIC timeline, its later awareness of recoupment, counsel's efforts to obtain information, and the possibility that Heartland could have pursued other avenues sooner. But the relevant question is whether Heartland received the reconsideration decisions in time to file an ALJ hearing request and, if not, whether good cause existed due to nonreceipt or delayed receipt. *See* 42 C.F.R. §§ 405.1002(a)(1), 405.942(b)(3)(v), 405.1014(e). The ALJ did not identify record evidence establishing timely receipt; Heartland's sworn nonreceipt evidence rebutted the regulatory presumption.

This ruling does not mean providers may ignore deadlines or wait indefinitely to appeal. Nor does it decide every factual dispute about what happened in late 2022 and early 2023. It is enough that the agency dismissal depended on presumed receipt, Heartland produced evidence rebutting that presumption, and the agency did not support its contrary conclusion with proof of receipt or a reasoned good-cause analysis. Because the dismissal is set aside on this ground, this Court does not reach the merits.

## CONCLUSION

The Secretary's Motion for Summary Judgment (Doc. 16) is denied, and Heartland's Motion for Summary Judgment (Doc. 17) is granted.  This case is remanded to the Secretary for an ALJ hearing on the merits of Heartland's Medicare appeals.

IT IS SO ORDERED.

                              *s/ Jack Zouhary*
                              JACK ZOUHARY
                              U. S. DISTRICT JUDGE

                              July 28, 2026